IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERB N. COLLINS and REBECCA WILLIAMS COLLINS, | No. Civ. S-06-123 RRB GGH |
| Plaintiffs, | **Memorandum of Opinion and Order** |
| v. | |
| CITY OF SACRAMENTO; Sacramento City Police Detective KEVIN PATTON; Sacramento City Police Officer (retired) JOHN TREFETHEN; Sacramento City Police Officer MICHELLE SCHRUM; Sacramento City Police Officer FRANK REYES; Sacramento City Police Detective PAUL SCHINDLER; Sacramento City Police Clerk PATRICIA CASSIDY; PATELCO CREDIT UNION; MELVIN BELL; Sacramento County District Attorney JAN SCULLY in her official capacity; Sacramento County Deputy District Attorney STEPHANIE LEONARD; and Sacramento City Police Detective JEFFREY BEEZLEY, | |
| Defendants.                    / | |

Plaintiffs Herb Collins and Rebecca Collins (collectively "Plaintiffs") filed an action against the City of Sacramento, six police officers, a police clerk, the District Attorney and a deputy district attorney (collectively "Defendants")[1] alleging civil right violations and state law claims arising out of a search of Plaintiffs residence and a seizure of their property. Defendants now move for summary judgment/adjudication on the grounds that each and every claim alleged by Plaintiffs fails as a matter of law. For the reasons stated below, the Court GRANTS the motion in part, and DENIES the motion in part.[2]

//

//

---

[1]   The defendants include: (1) the City of Sacramento; (2) Kevin Patton ("Patton") (police detective); (3) John Trefethen ("Trefethen") (police officer); (4) Michelle Schrum ("Schrum") (police detective); (5) Frank Reyes ("Reyes") (police officer); (6) Paul Schindler ("Schindler") (police detective); (7) Patricia Cassidy ("Cassidy") (police clerk); Patelco Credit Union ("Patelco"); (8) Melvin Bell ("Bell") (agent/employee of Patelco Credit Union); (9) Jan Scully ("Scully") (District Attorney); (10) Stephanie Leonard ("Leonard") (Deputy District Attorney); and (11) Jeffrey Beezley ("Beezley") (police detective).

[2]   Inasmuch as the Court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support of their positions, it further concludes oral argument is neither necessary nor warranted with regard to the instant matter.  See Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999)(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).  As a result, the oral argument presently scheduled for Wednesday, August 8, 2007, at 10:00 a.m., is hereby **VACATED**.

# I. BACKGROUND

On February 1, 2005, Sacramento police officers executed a search warrant on Plaintiffs' home and seized several items. Compl. ¶¶ 27-28. During the search, Mrs. Collins was detained in handcuffs and instructed at gunpoint to lie on the ground wearing only a t-shirt and underwear. Def.'s Statement of Undisputed Material Facts ("UMF") In Support of Summary Judgment/Adjudication ("MSJ/MSA") ¶ 4; Compl. ¶ 27.

The search of Plaintiffs' premises was based on the suspicion that Mr. Collins was a member of a cocaine trafficking conspiracy. Def.'s UMF ¶¶ 5 & 7-10. This suspicion arose out of Mr. Collins' association with known criminals, Rudolph Gibson ("Gibson") and Charles Dossman ("Dossman"),[3] as well as police surveillance of Mr. Collins engaging in activities consistent with hand-to-hand narcotics sales. Def.'s UMF ¶¶ 5 & 7-9.[4]

---

[3]    Both Mr. Gibson and Mr. Dossman have various narcotic related convictions, including possession for sale. See Affidavit of Det. Patton in Support of Search Warrant, attached as Exh. 12, In Support of Def.'s MSJ/MSA.

[4]    Mr. Collins considers Mr. Gibson to be his best friend and allowed him to use his boat. Dep. of Herb Collins at 51:6-20, attached as Exh. B, In Support of Def.'s MSJ/MSA. Mr. Collins considers Mr. Dossman to be an acquaintance. Dep. of Herb Collins at 68:13-24, attached as Exh. B, In Support of Def.'s MSJ/MSA. On the same day Plaintiffs' residence was searched, significant quantities of powder and rock cocaine were discovered during searches at the residences of Mr. Dossman and Mr. Gibson. Def.'s UMF ¶ 20; Exh. 21, attached In Support of Def.'s MSJ/MSA.

During the search, the officers discovered the following items in the master bedroom: (1) a box of gallon plastic bags; (2) a box of clear plastic sandwich bags; (3) a digital scale; (4) four cell phones; (5) three computers; (6) a mobile hard-drive; (7) multiple two-way radios; (8) a clear plastic sandwich bag containing white residue; and (9) a teal diary. Def.'s UMF ¶¶ 12-13. The officers also discovered three additional cell phones in a 1997 Mercedes-Benz SL-500 ("Mercedes-Benz") registered to Mr. Collins as well as three additional computer processing units located throughout the house. Def.'s UMF ¶ 14. Additionally, during a search of Mr. Collins' boat, which he shared with his best friend Mr. Gibson, officers discovered a handgun. Def.'s UMF ¶¶ 21 & 23. Finally, during the search of Mr. Collins' Mercedes-Benz, a narcotics canine showed interest in the passenger seat, indicating the possibility that a controlled substance was present. Def.'s UMF ¶ 19. The canine however did not "alert" to the presence of a controlled substance in either the house or the Mercedes-Benz. Pl.'s Separate Statement of Disputed Facts ¶ 4 ("SDF"), In Support of Pl.'s Opp. to Def.'s MSJ/MSA.

Mr. Collins was arrested at approximately 8:30 a.m. on the morning of the search. Pl.'s SDF ¶ 34. On February 3, 2005, the District Attorney filed charges against, among others, Mr. Collins, Mr. Gibson and Mr. Dossman for conspiracy to sell rock

cocaine with an arming enhancement. Def.'s UMF ¶ 28. Mr. Collins was held in custody from February 1, 2005 until April 19, 2005, when the Sacramento County Superior Court declined to hold him to answer for the conspiracy charge. Def.'s UMF ¶¶ 27 & 54.

## II. DISCUSSION

Plaintiffs allege the following civil rights claims under § 1983: (1) unreasonable search and seizure; (2) unreasonable seizure/false arrest; (3) wrongful/malicious prosecution; (4) excessive bail; (5) unlawful taking of property; and (6) due process violation. Additionally, Plaintiffs allege the following state law claims: (1) false arrest; (2) false imprisonment; (3) conversion; (4) defamation; (5) entity/supervisory liability; and (6) negligence. Defendants now move for summary judgment/adjudication with respect to each and every claim. These claims are addressed individually below.[5]

**A.   Legal Standard**

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

_____

[5]    At the outset, the court concludes that there are no viable claims asserted against defendant Reyes. Plaintiffs conceded that "there has been insufficient evidence developed regarding Defendant Frank Reyes to maintain an action against him."

any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. § 56(c).

The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. Id. at 248. A material fact is "genuine," if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. The burden then shifts to the nonmoving party to establish, beyond the pleadings, and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

"[W]hen the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case." Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 987 (9th Cir. 2006) (citing Celotex, 477 U.S. at 325). Hence, summary judgment is properly granted in favor of a defendant where the plaintiff has failed to sufficiently establish the existence of an element essential to his or her case, and on which he or she

will bear the burden of proof at trial.  <u>Miller</u>, 454 F.3d at 987

(citing <u>Cleveland v. Policy Management Sys. Corp.</u>, 526 U.S. 795,

805-06 (1999)).

When the moving party meets its burden, the "adverse party

may not rest upon the mere allegations or denials of the adverse

party's pleading, but the adverse party's response, by

affidavits or as otherwise provided in this rule, must set forth

specific facts showing that there is a genuine issue for trial.

If the adverse party does not so respond, summary judgment, if

appropriate, shall be entered against the adverse party."

Fed.R.Civ.P. 56(e).

"[I]n ruling on a motion for summary judgment, the

nonmoving party's evidence is to be believed, and all

justifiable inferences are to be drawn in [that party's] favor."

<u>Miller</u>, 454 F.3d at 988 (internal quotation marks omitted)

(citing <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999)).  "But the

non-moving party must come forward with more than 'the mere

existence of a scintilla of evidence.'"  <u>Miller</u>, 454 F.3d at 988

(quoting <u>Anderson</u>, 477 U.S. at 252).  Thus, "'[w]here the record

taken as a whole could not lead a rational trier of fact to find

for the nonmoving party, there is no genuine issue for trial.'"

<u>Miller</u>, 454 F.3d at 988 (quoting <u>Matsushita Elec. Indus. Co.,</u>

<u>Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).

Where divergent ultimate inferences may reasonably be drawn from the undisputed facts, summary judgment is improper. <u>Miller</u>, 454 F.3d at 988.

**B.   Unreasonable Search and Seizure**

Defendants argue that summary adjudication is warranted with respect to this claim because the officers are entitled to qualified immunity as they reasonably relied upon a facially valid search warrant when they searched Plaintiffs' residence and seized their property.[6]   In addition, Defendants argue that this claim fails as a matter of law with respect to detective Schindler because he did not participate in the search nor did he apply for the search warrant.

**1.   Qualified Immunity**

A private right of action pursuant to 42 U.S.C. § 1983[7] exists against law enforcement officers who, acting under the color of authority, violate federal constitutional or statutory rights of an individual.   <u>See</u> <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999).   Government officials sued in their individual

---

[6]   This claim is only alleged against defendants Patton, Schrum, Schindler and Trefethen.

[7]   42 U.S.C. § 1983 provides, in pertinent part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C. § 1983.

capacities under § 1983 may raise the affirmative defenses of qualified or absolute immunity, which generally protects government officials in the course of performing the discretionary duties of their offices. <u>Butler v. Elle</u>**,** 281 F.3d 1014, 1021 (9th Cir. 2002); <u>see</u> <u>Brosseau v. Haugen</u>, 543 U.S. 194, (2004) (per curiam) (the defense of qualified immunity operates to shield an officer from trial when the officer "reasonably mis-apprehends the law governing the circumstances she confronted," even if the officer's conduct was constitutionally deficient). "[P]olice officers are entitled to qualified immunity from § 1983 claims unless (1) their alleged conduct violated a constitutional right, and (2) that right was clearly established." <u>Edgerly v. City and County of San Francisco</u>, 2007 WL 2034040, *6 (9th Cir. 2007).

In considering the qualified immunity issue, the threshold question is whether: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly

established." Id. In determining whether a constitutional right is "clearly established," as required for plaintiff to defeat a claim of qualified immunity, the relevant, dispositive inquiry is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. Id. at 202. If the law does not place an officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. Saucier, 533 U.S. at 202 (citing Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law")); see Meredith v. Erath, 342 F.3d 1057, 1061 (9th Cir. 2003) (a right is clearly established if a reasonable official would have understood that what he was doing violated that right, i.e., an official is not protected by qualified immunity if in the light of pre-existing law the unlawfulness of their action is apparent). Finally, even if the violated right was clearly established, a police officer is entitled to immunity if the police officer does not fully appreciate how legal constraints apply to a specific situation and the officer's mistake as to what the law requires is reasonable. Motley v. Parks, 432 F.3d 1072, 1077 (citing Saucier, 533 U.S. at 205).

//

//

## 2. Judicial Deception

Plaintiffs argue that the search and seizure was invalid because the affidavit supporting the warrant contained "significant misstatements and omissions, resulting in the improper issuance of the warrant."

An official in a civil rights action that has submitted an affidavit containing statements they knew to be false or would have known were false had they not recklessly disregarded the truth, will not be protected by qualified immunity as they cannot be considered to have acted in an objectively reasonable manner. See Hervey v. Estes, 65 F.3d 784, 788-89 (9th Cir. 1995) (a law enforcement officer's conduct is objectively unreasonable, and therefore outside the protection of qualified immunity, when he or she deliberately or recklessly misstate facts material to the probable cause determination); Butler, 281 F.3d at 1024 (if an official was reckless or deceitful in preparing the warrant affidavit, then he both violated plaintiff's rights and is not entitled to qualified immunity). At the summary judgment stage, the plaintiff alleging judicial deception must make a substantial showing of deliberate falsehood or reckless disregard for truth and establish that, but for the dishonesty, the challenged action would not have occurred. Butler, 281 F.3d at 1024; Hervey, 65 F.3d at 788-89.

In short, "a plaintiff can only survive summary judgment on a defense claim of qualified immunity if the plaintiff can *both* establish a substantial showing of a deliberate falsehood or reckless disregard and establish that, without the dishonestly included or omitted information, the magistrate would not have issued the warrant. Put another way, the plaintiff must establish that the remaining information in the affidavit is insufficient to establish probable cause." Hervey, 65 F.3d at 789 (emphasis in original).

In the instant action, Plaintiffs' argue that detective Patton engaged in deliberate falsehood or reckless disregard in procuring the warrant by: (1) mischaracterizing Mr. Collins' actions during surveillance; (2) omitting Mr. Collins' lack of criminal record; and (3) deliberately "blurring" references between Mr. Collins, Mr. Dossman and Mr. Gibson.

With respect to Patton's alleged mischaracterization of Mr. Collins' actions during surveillance, Plaintiffs' point to several deposition passages where detective Patton states that he never observed any money or narcotics change hands between Mr. Collins and other individuals. Rather, he simply observed behavior consistent with narcotics trafficking, e.g., brief one-minute meetings inside Mr. Collins' car between Mr. Collins and other individuals. Because a comparison of detective Patton's affidavit with his deposition testimony does not reveal any

material differences, the court finds that detective Patton's affidavit does not contain material misrepresentations or mischaracterizations regarding the surveillance of Mr. Collins. As such, the court concludes that Plaintiffs' have failed to demonstrate that Patton deliberately or recklessly misstated facts material to the probable cause determination in his affidavit.

With respect to Patton's omission of Mr. Collins' criminal history from the affidavit, the court concludes that Plaintiffs' have failed to demonstrate that the omission was deceitful or that the inclusion of such information would have caused the warrant not to issue. A review of the affidavit reveals that it was sufficient to support probable cause, despite the omission of Mr. Collins' lack of criminal history. Finally, with respect to Plaintiffs' assertion that the affidavit was deceptive because it "blurred" the references between Mr. Collins, Mr. Dossman and Mr. Gibson, the court concludes that this assertion lacks merit. A review of the affidavit does not reveal any evidence of deliberate or reckless "blurring" of the conduct of Mr. Collins, Mr. Dossman and Mr. Gibson. The conduct described in the affidavit clearly references the individual it is attributed to.

For these reasons, detective Patton is entitled to qualified immunity for his conduct in procuring the search

warrant. Plaintiffs' failed to meet their burden of making a substantial showing of deliberate falsehood or reckless disregard for the truth, and establishing that, but for detective Patton's dishonesty, the warrant would not have issued. Additionally, because the other named defendants (Schrum, Schindler and Trefethen) did not participate in the execution of the affidavit, they cannot be liable for judicial deception in procuring the warrant.

Accordingly, the court grants summary adjudication regarding this claim.

### 3. Reasonableness of the Search

Defendants argue that summary adjudication is warranted with respect to this claim because the search was conducted in a reasonable manner under the circumstances.

Officers executing a search warrant for contraband have the authority to "detain the occupants of the premises while a proper search is conducted." Michigan v. Summers, 452 U.S. 692, 705 (1981). In Summers, the Court reasoned that such detentions are appropriate because the character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial. Id. at 701-05 (observing that the detention of an occupant is "surely less intrusive than the search itself," and the presence of a warrant assures that a neutral magistrate has determined that probable

14

cause exists to search the home). In <u>Summers</u>, the Court provided three legitimate law enforcement justifications for detaining the occupant of a residence during a search: (1) preventing flight in the event incriminating evidence is found; (2) minimizing the risk of harm to the officers; and (3) facilitating the orderly completion of the search. <u>Id.</u> at 702-03.

Inherent in the officer's authority to detain an occupant at the place to be searched is the authority to use reasonable force to effectuate the detention, including the use of handcuffs. <u>See</u> <u>Muehler v. Mena</u>, 544 U.S. 93, 98-99 (2005) (holding that a 2-to-3 hour detention of an occupant in handcuffs in a search for weapons where a wanted gang member resides was reasonable); <u>cf.</u> <u>Dawson v. City of Seattle</u>, 435 F.3d 1054, 1066 (9th Cir. 2006) (observing that while the duration of a detention may be coextensive with the period of a search, and require no further justification, the police do not have unfettered authority to detain an occupant insofar as they must conduct the detention in a reasonable manner).

In the instant case, it is undisputed that the officers searched Plaintiffs' residence for drugs pursuant to a warrant with the knowledge that Mr. Collins was associated with individuals known to have been involved in selling narcotics, possessing weapons and engaging in violence toward law

enforcement.   See Affidavit of Det. Patton in Support of Search Warrant, attached as Exh. 12, In Support of Def.'s MSJ/MSA; Decl. of Craig Michaels ("Michaels"), attached as Exh. H, In Support of Def.'s MSJ/MSA.   It is also undisputed that, while Mrs. Collins was initially detained at gunpoint during the search wearing only a t-shirt and underwear, she was provided sweat pants shortly thereafter.   Dep. of Rebecca Collins at 13:19-25, 14:1-4, 16:4-25, 17:1-12, attached as Exh. F, In Support of Def.'s MSJ/MSA.   Finally, it is undisputed that Mrs. Collins was detained in handcuffs for the entire duration of the search, except for the last thirty minutes.   Dep. of Rebecca Collins at 19:18-25, attached as Exh. F, In Support of Def.'s MSJ/MSA.

Based on the foregoing, the court concludes that the search of Plaintiffs' residence was reasonable.   The officers acted within their authority in detaining Ms. Collins during the execution of a warrant to search for drugs.   See Muehler, 544 U.S. at 98 ("An officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure'"); Summers, 452 U.S. at 704-05 ("If the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of privacy is justified, it is constitutionally reasonable to

require that citizen to remain while officers of the law execute a valid warrant to search his home").

Additionally, the court concludes that the officer's use of force in the form of handcuffs to effectuate the detention was reasonable because the government's interest in: (1) preventing flight, (2) minimizing the risk of harm to officers, and (3) facilitating the orderly completion of the search, outweighs the marginal intrusion experienced by Mrs. Collins. See Muehler, 544 U.S. at 99-100. Moreover, because the search may have given rise to sudden violence or frantic efforts to conceal or destroy evidence, the officers' right to use handcuffs to detain Mrs. Collins was heightened as it minimized the harm to both the officers and her family. See Summers, 452 U.S. at 702-03 (noting that the execution of a warrant to search for drugs "may give rise to sudden violence or frantic efforts to conceal or destroy evidence").

For these reasons, the officers are entitled to qualified immunity for the search of Plaintiffs' residence and the detention of Mrs. Collins because it was reasonable for them officers to believe that the search and detention were lawful.

Accordingly, the Court grants summary adjudication regarding this claim.[8]

**C.   Unreasonable Seizure/False Arrest**

Defendants argue that summary adjudication is warranted with respect to this claim because the arresting officers are entitled to qualified immunity as probable cause existed to

---

[8]   With respect to Plaintiffs' unreasonable search claim based on alleged damage and destruction of property during the search, the court concludes that a genuine issue of material fact exists regarding this claim. Defendants failed to proffer sufficient evidence to rebut Plaintiffs testimony that the officers destroyed and damaged various personal items during the search, including laptop computers and Plaintiffs' bed. Dep. of Rebecca Collins at 37:1-40:25, 46:1-20, attached as Exh. 28, In Support of Pl.'s Opp. to Def.'s MSJ/MSA; Dep. of Herb Collins at 116:9-25, 118:1-121:14, attached as Exh. 3, In Support of Pl.'s Opp. to Def.'s MSJ/MSA. As such, Defendants failed to meet their burden to demonstrate the absence of a genuine issue of fact regarding the reasonableness of the search. See United States v. Becker, 929 F.2d 442, 446 (9th Cir. 1991) (noting that while officers executing a search warrant must occasionally damage property in order to perform their duty, destruction of property during a search is not favored and may violate the Fourth Amendment if it is not reasonably necessary to effectively execute the search warrant). Additionally, the court concludes that summary adjudication is not warranted with respect to detective Patton because Defendants failed to sufficiently rebut Plaintiffs evidence indicating that detective Patton was present during the search and may have participated in the search. Dep. of Det. Patton at 93:18-23, 99:3-4, attached as Exh. 1, In Support of Pl.'s Opp. to Def.'s MSJ/MSA. As such, a genuine issue of fact exists as to whether detective Patton's conduct regarding the search was reasonable. Finally, the court concludes that summary adjudication is warranted with respect to detective Schindler because Plaintiffs failed to proffer sufficient evidence to rebut detective Schindler's declaration stating that he did not participate in the search. Decl. of Det. Schindler at ¶ 2, attached as Exh. O, In Support of Def.'s MSJ/MSA.

arrest Mr. Collins.[9]   In addition, Defendants argue that this claim fails as a matter of law with respect to detective Schindler and officer Trefethen because they did not arrest Plaintiff.

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment provided that the arrest was made without probable cause or other justification." <u>Dubner v. City and County of San Francisco</u>, 266 F.3d 959, 964 (9th Cir. 2001).  Probable cause exists when "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense." <u>Hart v. Parks</u>, 450 F.3d 1059, 1065-66 (9th Cir. 2006) (internal quotation marks omitted).  "Police must only show that, under the totality of the circumstances, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." <u>Id.</u> at 1066 (internal quotation marks omitted).  Probable cause may be based on the collective knowledge of all the officers involved in an investigation and all the reasonable inferences that may be drawn therefrom.  <u>See</u> <u>Motley</u>, 432 F.3d at 1081 (noting that

---

[9]    This claim is only alleged against defendants Patton, Schrum, Schindler and Trefethen.

19

officers are entitled to rely on the observations and knowledge obtained by fellow officers).

The plaintiff bears the burden of proof on the issue of unlawful arrest, which can be satisfied by showing that the arrest was conducted without a valid warrant. Dubner, 266 F.3d at 965. The burden then shifts to the defendant to provide some evidence that the arresting officers had probable cause for a warrantless arrest. Id. The plaintiff still bears the ultimate burden of proof, but the burden of production falls on the defendant. Id.

In the instant case, Mr. Collins was arrested without a warrant. As such, Defendants bear the burden of demonstrating that probable cause existed for the warrantless arrest. The court concludes that the officers have satisfied their burden in this regard because they proffered sufficient evidence to demonstrate that probable cause existed at the time of arrest. Specifically, Defendants proffered the testimony of several officers who stated that they observed Mr. Collins engage in activities consistent with narcotic trafficking, including hand-to-hand sales. See Dep. of Det. Patton at 80:4-21, 86:16-25, 87:8-16, attached as Exh. E, In Support of Def.'s MSJ/MSA; Dep. of Det. Schrum at 32:23-25, 33:16, 98:3-25, 99:1-7, 100:3-5, 100:22-28, 101:10, attached as Exh. D, In Support of Def.'s MSJ/MSA; Dep. of Det. Schindler at 14:12-21, attached as Exh. G,

In Support of Def.'s MSJ/MSA; Decl. of Michaels, attached as Exh. H, In Support of Def.'s MSJ/MSA.  Additionally, Defendants proffered evidence demonstrating that the officers knew that Mr. Collins was associated with convicted criminals Mr. Gibson and Mr. Nossman, both of whom were found in possession of powder and/or rock cocaine on the day Plaintiffs' residence was searched.  Affidavit of Det. Patton in Support of Search Warrant, attached as Exh. 12, In Support of Def.'s MSJ/MSA; Decl. of Michaels, attached as Exh. H, In Support of Def.'s MSJ/MSA; Ex. 21, attached In Support of Def's MSJ/MSA. Finally, Defendants proffered evidence demonstrating that the officers found items consistent with narcotic trafficking, including, plastic bags, a digital scale, two-way radios, multiple phones and computers, a diary (perceived to be a "pay-owe" ledger) and a plastic bag with white residue.  See Exh. 10, attached In Support of Def.'s MSJ/MSA.

Based on the foregoing, the court concludes that the officers had probable cause to arrest Mr. Collins.  Under the totality of the circumstances, a prudent person would have concluded that there was a fair probability Mr. Collins had committed a crime, e.g., possession of narcotics for sale and/or conspiracy to traffic narcotics.  Mr. Collins was observed engaging in what appeared to be hand-to-hand drug trafficking, possessed items consistent with participating in a drug

trafficking conspiracy and was closely associated with individuals convicted of drug related offenses.[10]

For these reasons, the officers are entitled to qualified immunity for the warrantless arrest of Mr. Collins. At the time of his arrest, the officers reasonably believed that there was probable cause that he had committed a crime, e.g., possession of narcotics for sale and/or conspiracy to traffic narcotics. See Edgerly, 2007 WL 2034040 at *6 (officers are entitled to qualified immunity if a reasonable officer could have believed that probable cause existed for the arrest under the circumstances).[11]

---

[10]  While the white residue in the baggie discovered in Plaintiffs' master bedroom was later determined to be prescription drugs, there is no evidence in the record showing that the officers knew at the time of the arrest that the white residue was anything other than illicit narcotics.

[11]  "A conviction of conspiracy requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act 'by one or more of the parties to such agreement' in furtherance of the conspiracy." People v. Morante, 20 Cal.4th 403, 416 (1999) (footnote omitted). In Morante, the court noted that "[i]t is well established that one may become criminally liable for possession for sale or for transportation of a controlled substance, based upon either actual or constructive possession of the substance. Constructive possession exists where a defendant maintains some control or right to control contraband that is in the actual possession of another." Id. at 417 (citation omitted). "Similarly, a defendant may be liable for constructive transportation of a controlled substance. A defendant also may be convicted of possession or transportation of a controlled substance when his

Accordingly, the court grants summary adjudication regarding this claim.

**D.    Wrongful/Malicious Prosecution & Detention**

Defendants argue that summary adjudication is warranted with respect to this claim because there was no evidence in the record demonstrating that Mr. Collins was wrongfully prosecuted by any defendant.[12]   More particularly, Defendants argue that this claim fails as a matter of law as against detective Schindler because he did not commence or direct the criminal prosecution of Mr. Collins.   Additionally, Defendants argue that this claim fails as a matter of law as against detectives Patton and Schrum and officer Trefethen because Plaintiffs cannot show that the criminal action was terminated in favor of Mr. Collins, that it was brought without probable cause, or that it was initiated with malice.

In the Ninth Circuit, the general rule is that a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy.   Usher v. City of Los Angeles, 828 F.2d 556, 562 (9th Cir. 1987).   An exception however exists where a malicious prosecution is conducted with the intent to deprive a

---

or her dominion and control are exercised through the acts of an agent."   Id. (citation omitted).

[12]   This claim is only alleged against defendants Patton, Schrum, Trefethen and Schindler.

person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights. Usher, 828 F.2d at 562.[13]   Thus, "[i]n order to prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'"   See Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995)).

A claim for malicious prosecution under § 1983 incorporates the elements of the state common law tort of malicious prosecution.   See Awabdy, 368 F.3d at 1066-68.   Under California law, the elements of malicious prosecution are: (1) that a prior action was commenced by or at the direction of the defendant; (2) was pursued to a legal termination in plaintiff's favor; (3) was brought without probable cause; and (4) was initiated with malice.   Pattiz v. Minye, 61 Cal.App.4th 822, 826 (1998).

---

[13]   The California Supreme Court has held that under California Government Code § 821.6, an officer who maliciously and knowingly provides a prosecutor with false information that leads to the filing of criminal charges enjoys absolute immunity from liability.   Asgari v. City of Los Angeles, 15 Cal.4th 744, 759 (1997).   As such, Plaintiffs' malicious prosecution claim is cognizable under § 1983.

While the decision to file a criminal complaint is ordinarily presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings, this presumption does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings. <u>Awabdy</u>, 368 F.3d at 1067.

A plaintiff in a malicious prosecution action bears the burden to prove facts overcoming the presumption that the district attorney acted according to law (i.e., exercised independent prosecutorial judgment in the charging decision). <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119, 1126 (9th Cir. 2002) That is, the plaintiff has the burden to produce contrary evidence, e.g., that the district attorney was subjected to unreasonable pressure by the police officers, or that the officers knowingly withheld relevant information with the intent to harm plaintiff, or that the officers knowingly supplied false information. <u>Id.</u> If no evidence is produced to rebut the presumption, the presumption is sufficient to require summary judgment for the defendant. <u>Id.</u>

In the complaint, Plaintiffs allege that defendants Patton, Schrum, Trefethen and Schindler caused Mr. Collins' malicious prosecution and/or continuing wrongful detention by illegally arresting him, mischaracterizing the seized evidence and suppressing exculpatory evidence.  More particularly, Plaintiffs allege that Defendants mischaracterized: (1) paperwork relating to vehicle sales as drug sales paperwork; (2) gallon plastic bags used for storing sewing supplies as drug packing materials; and (3) a BB gun as a firearm.  Additionally, Plaintiffs allege that the officers: (1) failed to disclose that a drug sniffing canine did not detect illegal drugs at the premises; (2) withheld laboratory results confirming that the white residue found in a plastic bag was prescription medication; (3) withheld the forensic analysis of Plaintiffs' computers; and (4) suppressed critical witness statements and investigative reports confirming the non-criminal nature of Mr. Collins' monitored activities, including a statement from a witness providing exculpatory evidence.

In the instant case, the court concludes that Plaintiffs failed to establish a prima facie case of malicious prosecution. As discussed above, probable cause existed to arrest Mr. Collins.  Moreover, Plaintiffs failed to present any evidence demonstrating that the action was initiated with malice.  Finally, Plaintiffs did not present sufficient evidence

to overcome the presumption that the district attorney exercised independent prosecutorial judgment in her decision to charge Mr. Collins.[14]   There is no evidence in the record demonstrating that the district attorney was subjected to unreasonable pressure by the officers.   Nor is there evidence in the record demonstrating that the officers knowingly withheld relevant information with the intent to harm plaintiff or that the officers knowingly supplied false information.

In this regard, Plaintiffs have not shown that the white residue was tested prior to the preliminary examination or that the forensic computer analysis was complete prior to the preliminary examination.   In fact, the evidence in the record indicates that the computer analysis was not completed until April 19, 2005, the date Mr. Collins was discharged.   Exh. 4, attached In Support of Pl.'s Opp. to Def.'s MSJ/MSA; Dep. of Det. Richard Gilleland ("Gilleland") at 9:10-15, 10:1-13, attached as Exh. EE, In Support of Def.'s MSJ/MSA.[15] Additionally, there is no evidence in the record demonstrating that the polygraph of Mr. Doyle was taken prior to the

---

[14]   The prosecutor testified that she did not dismiss the case because, based on her review of the evidence, she felt that Mr. Collins had committed a crime.   See Dep. of Leslie Monahan at 59:7-20, attached as Exh. L, In Support of Def.'s MSJ/MSA.

[15]   Detective Gilleland testified that he began examining the computers on April 12, 2005 and does not remember when he finished.   Dep. of Det. Gilleland at 9:10-15, 10:1-13, attached as Exh. EE, In Support of Def.'s MSJ/MSA.

preliminary examination or that any officer knowingly withheld information regarding the results of such polygraph. In fact, there is no evidence in the record demonstrating that either detective Patton or detective Schindler possessed the results of this polygraph before the preliminary examination. See Dep. of Det. Patton at 56:11-58:24, attached as Exh. Z, In Support of Def.'s MSJ/MSA; Dep. of Det. Schindler at 50:23-25, 51:1-25, attached as Exh. 23, In Support of Pl.'s Opp. to Def.'s MSJ/MSA. Finally, there is no evidence in the record demonstrating that any officer knowingly withheld the fact that a drug sniffing canine was used at Plaintiffs' residence or that any officer knowingly supplied false information regarding the seized evidence.

For these reasons, the court grants summary adjudication regarding this claim.

**E.   Excessive Bail**

Defendants argue that summary adjudication is warranted with respect to this claim because detective Schindler and officer Trefethen did not participate in the bail setting process and detectives Patton and Schrum are entitled to qualified immunity.[16]

---

[16]   This claim is only alleged against defendants Patton, Schrum, Schindler and Trefethen.

To determine whether the Excessive Bail Clause has been violated, courts look to the valid state interests bail is intended to serve for a particular individual and judge whether bail conditions are excessive for the purpose of achieving those interests. Galen v. County of Los Angeles, 477 F.3d 652, 660 (9th Cir. 2007). The state may not set bail to achieve invalid interests or in an amount that is excessive in relation to the valid interests it seeks to achieve. Id. For non-capital defendants, courts may neither deny bail nor set it in a sum that is the functional equivalent of no bail. Id. at 661.

In order to prevail on a claim that his bail enhancement violated the Excessive Bail Clause, a plaintiff alleging a § 1983 violation bears the burden of demonstrating that his bail was enhanced for purposes unauthorized by California law or that the amount of bail was excessive in light of the valid purposes for which it was set. Galen, 477 F.3d at 661.

In California, judicial officers are vested with exclusive authority to enhance or reduce bail and a judicial officer's exercise of independent judgment in the course of his official duties is a superseding cause that breaks the chain of causation linking law enforcement personnel to the officer's decision. Galen, 477 F.3d at 663. Thus, a police officer cannot be held liable under § 1983 for violating a plaintiff's right to be free from excessive bail unless the plaintiff shows that the officers

deliberately or recklessly misled the judge, and that but for such misrepresentations, bail would not have been unconstitutionally excessive.  Id. at 663-64.[17]

In the instant case, Plaintiffs allege that the officers caused excessive bail by suppressing exculpatory evidence and mischaracterizing the seized evidence.  As set forth above, the court disagrees.  Additionally, Plaintiffs allege that detective Schrum caused excessive bail by submitting a bail enhancement declaration containing reckless misstatements of fact, including that (1) Mr. Collins had been arrested for possession of narcotics, (2) was armed, and (3) was part of a motorcycle gang.  Bail Enhancement Decl. of Det. Schrum, attached as Exh. 11, In Support of Pl.'s Opp. to Def.'s MSJ/MSA.  The court concludes that, while the foregoing statements were made by detective Schrum, these statements were not deliberate or reckless misstatements of fact.

As discussed above, probable cause existed to arrest Mr. Collins for possession of narcotics and conspiracy to traffic narcotics.  Moreover, there is no evidence in the record demonstrating that detective Schrum knew that the baggie

---

[17] As an initial matter, the court concludes that because Plaintiffs failed to present evidence demonstrating that either detective Schindler or officer Trefethen participated in enhancing Mr. Collins' bail, summary adjudication is warranted in their favor regarding this claim.

containing the white residue was anything other than illicit narcotics prior to his bail enhancement request.  Additionally, there is no evidence in the record demonstrating that, at the time detective Schrum requested bail enhancement, he knew that the handgun found on Mr. Collins' boat was not his.  Finally, Defendants submitted evidence demonstrating that detective Patton advised detective Schrum that he had been informed by other officers that Mr. Collins was associated with a motorcycle gang.  Dep. of Det. Schrum at 156:1-15, 157:1-21, attached as Exh. 10, In Support of Pl.'s Opp. to Def.'s MSJ/MSA.  As such, a reasonable person in detective Schrum's position would have believed his statements to be true.

Accordingly, the court grants summary adjudication regarding this claim because Plaintiffs' failed to demonstrate that either detective Schrum or detective Patton deliberately or recklessly misled the judge causing bail to be unconstitutionally excessive.

**F.   Unlawful Taking of Property**

Defendants argue that summary adjudication is warranted with respect to this claim because there is no evidence demonstrating that the officers or Patricia Cassidy caused Mr. Collins' Mercedes-Benz to be seized.[18]

---

[18]   This claim is alleged against all defendants.

The Fifth Amendment of the United States Constitution provides, in relevant part, "Nor shall private property be taken for *public use,* without just compensation." U.S. Const. Amend V (emphasis added). The Fifth Amendment applies to the states through the Fourteenth Amendment. See, e.g., Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172, 175, n.1 (1985). "If private property is taken but not taken for public use, the property owner does not have a claim for compensation under the Fifth Amendment but may have a claim under Section 1983 for deprivation of property without due process of law under the Fourteenth Amendment." Jackson v. Placer County, 2007 WL 1429827, *9 (E.D. Cal. 2007) (citing Hernandez v. Lafayette, 643 F.2d 1188, 2000, n.26 (5th Cir. 1981).

In the instant case, Plaintiffs have neither alleged nor provided any evidence that their Mercedes-Benz was taken for public use. Instead, Plaintiffs have simply alleged that Defendants improperly seized their vehicle and released it to Patelco, a private lien-holder of the vehicle. Compl. ¶¶ 41-42. Therefore, because Plaintiffs have not alleged, let alone demonstrated, that their property was taken for public use, they do not have a viable § 1983 claim based on a violation of their Fifth Amendment rights. Thus, the issue becomes whether Plaintiffs have a viable § 1983 claim for deprivation of

32

property without due process of law under the Fourteenth Amendment.

"'Loss of the use and enjoyment of a car deprives the owner of a property interest that may be taken from him only in accordance with the Due Process Clause.'" Schneider v. County of San Diego, 28 F.3d 89, 92 (9th Cir. 1994). Due process requires that Mr. Collins be given notice and an "'opportunity to be heard at a meaningful time and in a meaningful manner.'" Id. "For the notice to satisfy due process, it must 'be of such nature as reasonably to convey the required information.'" Id.

In California, a vehicle may be subject to forfeiture if it has been used as an instrument to facilitate the manufacture of, or possession for sale or sale of cocaine. Cal. Health & Safety Code § 11470(e). A police officer may lawfully seize any item subject to forfeiture under § 11470 subsequent to making an arrest for, among other things, selling or transporting cocaine or conspiring to engage in such conduct. Cal. Health & Safety Code § 11488(a).

"The . . . district attorney of the county in which property is subject to forfeiture under Section 11470 may . . . order forfeiture of personal property not exceeding twenty-five thousand dollars ($25,000) in value. The . . . district attorney shall provide notice of proceedings under this subdivision . . . including: (1) A description of the

property[;] (2) The appraised value of the property[;] (3) The date and place of seizure or location of any property not seized but subject to forfeiture[;] (4) The violation of law alleged with respect to forfeiture of the property[;] (5) The instructions for filing and serving a claim with . . . the district attorney pursuant to Section 11488.5[19] and time limits for filing a claim and claim form." Cal. Health & Safety Code § 11488.4(j) (footnote added).[20] "If no claims are timely filed, . . . the district attorney shall prepare a written declaration of forfeiture of the subject property to the state and dispose of the property in accordance with Section 11489.[21] A written

---

[19]   "Any person claiming an interest in the property seized pursuant to Section 11488 may . . . within 30 days after receipt of actual notice, file with the superior court of the county in which the defendant has been charged with the underlying or related criminal offense . . . a claim, verified in accordance with Section 446 of the Code of Civil Procedure, stating his or her interest in the property." Cal. Health & Safety Code § 11488.5(a)(1).

[20]   Section 11488.4(j) is an exception to the general rule which provides, in relevant part, "if . . . the local governmental entity determines that the factual circumstances do warrant that . . . things of value seized or subject to forfeiture come within the provisions of subdivisions (a) to (g), inclusive, of Section 11470, and are not automatically made forfeitable or subject to court order of forfeiture or destruction by another provision of this chapter, the . . . district attorney shall file a petition of forfeiture with the superior court of the county in which the defendant has been charged with the underlying criminal offense . . . " Cal. Health & Safety Code § 11488.4(a).

[21]   When property is forfeited to the state it shall be distributed "[t]o the bona fide or innocent purchaser,

34

declaration of forfeiture signed by the . . . district attorney under this subdivision shall be deemed to provide good and sufficient title to the forfeited property.   The prosecuting agency ordering forfeiture pursuant to this subdivision shall provide a copy of the declaration of forfeiture to any person listed in the receipt given at the time of seizure and to any person personally served notice of the forfeiture proceedings." Cal. Health & Safety Code § 11488.4(j) (footnote added).

   In the instant case, Plaintiffs assert that their due process rights were violated because they were not afforded an opportunity to present their claim regarding the Mercedes-Benz before it was released.   Defendants assert that the release of the Mercedes-Benz was statutorily authorized because Mr. Collins failed to file a timely claim contesting the seizure or a timely motion seeking return of his property.   Additionally, Defendants assert that because the officers seized the Mercedes-Benz based on their reasonable belief that it had been used as an instrument to facilitate the manufacture of, or possession for sale or sale of cocaine, they are entitled to qualified immunity.

---

conditional sales vendor, or mortgagee of the property, if any, up to the amount of his or her interest in the property, when the court declaring the forfeiture orders a distribution to that person."   Cal. Health & Safety Code § 11489(a).

As an initial matter, the court finds that, to the extent that any officer was involved in the seizure of the Mercedes-Benz, they are entitled to qualified immunity because their actions were conducted pursuant to a state statute. With respect to the notice requirements of section 11488.4(j), the court finds that the notice sent by the district attorney was facially deficient as it did not contain the appraised value of the Mercedes-Benz. See Exh. 13, attached In Support of Pl.'s Opp. to Def.'s MSJ/MSA. Thus, because it fails to comply with the statutory notice requirements, it was improper. See Baca v. Minier, 229 Cal.App.3d 1253, 1265 (1991) ("Statutes imposing forfeitures are not favored and are to be strictly construed in favor of the persons against whom they are sought to be imposed"). Indeed, without evidence of the appraised value of the Mercedes-Benz at the time it was seized, it is unclear as to whether asset forfeiture procedures were lawfully initiated under § 11488.4(j). Section 11488.4(j) expressly states that asset forfeiture proceedings cannot be initiated under this section unless the property is valued at less than $25,000.

Additionally, the court finds that Defendants have failed to demonstrate compliance with § 11488.4(j) insofar as they have failed to submit evidence demonstrating that the district attorney prepared a written declaration of forfeiture to the state or provided such declaration to Mr. Collins, an individual

personally served notice of the forfeiture proceedings. Finally, the court finds that Defendants have failed to demonstrate compliance with § 11488.5(a)(1) insofar as they have failed to demonstrate that they released the Mercedes-Benz thirty days after providing Mr. Collins with notice of forfeiture. Indeed, the evidence submitted indicates that Mr. Collins was given notice of forfeiture on February 1, 2005 and the Mercedes-Benz was released on February 24, 2005, approximately one week before the thirty day time limit. Exh. 13, attached In Support of Pl.'s Opp. to Def.'s MSJ/MSA; Exh 39, attached In Support of Pl.'s Opp. to Def.'s MSJ/MSA.

For these reasons, the court concludes that there is a genuine issue of material fact as to whether Mr. Collins' due process rights were violated with respect to Defendants' seizure and release of his Mercedes-Benz. Accordingly, the court denies summary adjudication regarding this claim in all respects, except that it grants summary judgment in favor of each and every officer on the ground that they are entitled to qualified immunity.

**G.   Violation of Due Process**

Defendants argue that summary adjudication is warranted with respect to this claim because there is no evidence demonstrating that any defendant published or disseminated false

information implicating Mr. Collins in drug trafficking.[22] Rather, according to Defendants, the evidence demonstrates that the news release published about Plaintiffs arrest was required by the California Public Records Act.   Additionally, Defendants argue that this claim is not viable because a person's reputation is not a protected liberty or property interest under the Fourteenth Amendment and cognizable under § 1983.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendments."   <u>Jackson</u>, 2007 WL 1429827 at *9 (internal quotation marks omitted) (quoting <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976)).   The procedural due process rights of the Fourteenth Amendment apply only when there is a deprivation of a constitutionally protected liberty or property interest.   <u>WMX Technologies, Inc. v. Miller</u>, 197 F.3d 367, 373 (9th Cir. 1999); <u>see</u> <u>Weiner v. San Diego County</u>, 210 F.3d 1025, 1032 (9th Cir. 2000) ("To establish a civil rights claim under 42 U.S.C. § 1983, a plaintiff must assert more than a violation of state tort law - he must show that the defendant deprived him of an interest protected by the Constitution or federal law.") A person's interest in their reputation standing alone is not a

---

[22]   This claim is only alleged against defendants Patton, Schrum, Schindler and Trefethen.

38

constitutionally protected liberty or property interest.  <u>WMX Technologies</u>, 197 F.3d at 374 (citing <u>Paul v. Davis</u>, 424 U.S. 693).

To state a claim for defamation under § 1983, a plaintiff must allege loss of a recognizable property or liberty interest in conjunction with the allegation of injury to reputation. <u>Cooper v. Dupnik</u>, 924 F.2d 1520, 1532 (9th Cir. 1991). Plaintiff must show that either the defamatory communication caused the loss of a constitutionally protected right or that the injury to reputation occurred "in conjunction" with the loss of a recognizable property or liberty interest.  <u>See</u> <u>Stevens v. Rifkin</u>, 608 F.Supp. 710, 726-27 (N.D. Cal. 1984) (citations omitted); <u>Gobel v. Maricopa</u>, 867 F.2d 1201, 1205 (9th Cir. 1989) (holding that plaintiff sufficiently pled "defamation plus" where complaint alleged false statements were made in connection with illegal arrest), abrogated on other grounds by <u>Merritt v. County of Los Angeles</u>, 875 F.2d 765 (9th Cir. 1989).

In the instant case, Plaintiffs procedural due process claim alleges that Mr. Collins "suffered damages to his reputation" due to Defendants "dissemination of news releases falsely implicating [him] in drug trafficking" in violation of his rights under the Fourth through Fourteenth Amendments. Plaintiffs further allege that as a consequence of such disclosures he lost his job and numerous job opportunities. As

such, Mr. Collins' "defamation plus" claim appears to be based on his assertion that Defendants deprived him of his Fourth Amendment rights by misstating and omitting exculpatory facts in the search warrant affidavit as well as by arresting him without probable cause.  Plaintiffs, however, have failed to establish Defendants' liability on these claims.  Therefore, this claim does not survive the summary judgment stage.  See, e.g., Weiner, 210 F.3d at 1032 (summary judgment granted in favor of defendant on plaintiff's § 1983 claim predicated on defamation, where plaintiff failed to show right, privilege, or immunity protected by Constitution was violated in conjunction with alleged defamatory statement).

Accordingly, the court grants summary adjudication regarding this claim.

**H.   Monell Claims**

The Plaintiffs have alleged the following Monell claims against the City of Sacramento: (1) unreasonable search and seizure; (2) false arrest; (3) malicious prosecution; (4) excessive bail; and (5) unlawful taking/due process violation. Defendants argue that summary adjudication is warranted with respect to each and every claims because Plaintiffs have not presented sufficient evidence to establish liability under Monell v. Dept. of Social Services, 436 U.S. 658 (1978).

A plaintiff may bring a § 1983 claim against a local government if he or she can demonstrate that an action pursuant to official municipal policy of some nature caused a constitutional tort. <u>Monell</u>, 436 U.S. at 691. To succeed on such a claim, a plaintiff must demonstrate that a defendant's policy, custom or practice was the "moving force" behind the alleged constitutional violation. <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 404 (1997); <u>Edgerly</u>, 2007 WL 2034040 at *10; <u>see also</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989) (a <u>Monell</u> plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation").

In the instant action, summary adjudication is warranted with respect to each and every Monell claim, except for the due process claim regarding the seizure and release of the Mercedes-Benz, because Plaintiffs have failed to present evidence demonstrating that an official municipal policy, custom or practice was the "moving force" behind the alleged constitutional violations.

With respect to the due process claim, Plaintiffs have submitted sufficient evidence to create a genuine issue of fact as to whether the City of Sacramento had a policy or custom that unlawfully deprived Mr. Collins of his Mercedes-Benz. Sacramento City police clerk Patricia Cassidy specifically

testified that the Mercedes-Benz was released to Patelco, the lien-holder, pursuant to a city policy.  Dep. of Patricia Cassidy ("Cassidy") at 17:9-19:25, 23:1-26:18, attached as Exh. 48, In Support of Def.'s MSJ/MSA.

Accordingly, summary adjudication is granted regarding each and every Monell claim, except for the due process claim.

**I.   State Law Claims**

**1. False Arrest and False Imprisonment**

Defendants argue that summary adjudication is warranted with respect to this claim for the same reasons that it was warranted for Plaintiffs' false arrest claim under § 1983.[23]

The tort of false imprisonment is: "(1) the nonconsenual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief."  Easton v. Sutter Coast Hosp., 80 Cal.App.4th 485, 496 (2000).  "Under California law, the torts of false arrest and false imprisonment are not separate torts, as false arrest is 'but one way of committing a false imprisonment.'"  Watts v. County of Sacramento, 256 F.3d 886, 891 (9th Cir. 2001) (quoting Asgari v. City of Los Angeles, 15 Cal.4th 744 (1997)).  "A cause of action for false imprisonment based on unlawful arrest will lie where there was an arrest without process followed by

---

[23]  These claims are only alleged against defendants Patton, Schrum, Schindler, Trefethen and the City of Sacramento.

imprisonment." <u>Watts</u>, 256 F.3d at 891 (citing <u>City of Newport</u> <u>Beach v. Sasse</u>, 9 Cal.App.3d 803 (1970)).

In the instant case, Plaintiffs allege that Mr. Collins was falsely arrested without a warrant and without probable cause. Plaintiffs further allege that Mr. Collins was falsely imprisoned based on the officers suppression of exculpatory evidence and mischaracterization of seized evidence. Based on the discussion above, this claim cannot survive the summary judgment stage because the officers had probable cause to arrest Mr. Collins. Additionally, this claim fails as a matter of law because Plaintiffs did not establish a genuine issue of fact regarding whether Defendants improperly exerted pressure on the prosecutor, knowingly provided misinformation to her, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings.

Accordingly, the Court grants summary adjudication in favor of Defendants on this claim.

**2. Conversion**

Defendants argue that summary adjudication is warranted with respect to this claim because Plaintiffs cannot establish

that they had the right to possess the Mercedes-Benz or that Defendants wrongfully converted it.[24]

Conversion is the wrongful exercise of dominion over the property of another. _Mendoza v. Rast Produce Co., Inc._, 140 Cal.App.4th 1395, 1404-05 (2006). Under California law, the elements of conversion are: (1) plaintiff owns or has the right to possess property; (2) defendant wrongfully converts or disposes of the property; and (3) damages. _Id._ at 1405; _PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro LLP_, 150 Cal.App.4th 384, 395 (2007). "The gravamen of the tort is the defendant's hostile act of dominion or control over a specific chattel to which the plaintiff has the right of immediate possession." _PCO, Inc._, 150 Cal.App.4th at 395. Because conversion is a strict liability tort the foundation of the action rests neither in the knowledge nor the intent of the defendant. _Mendoza_, 140 Cal.App.4th at 1405. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial. _Id._

This claim survives summary judgment because Plaintiffs have raised a genuine issue of material fact as to whether Mr. Collins had the right to possess the Mercedes-Benz at the time it was released and whether Defendants properly disposed of

---

[24] This claim is alleged against all defendants.

the Mercedes-Benz, i.e., released it to Patelco.  The evidence submitted indicates that at the time the Mercedes-Benz was released, Mr. Collins was the registered owner of the vehicle and was current with his payments.  Dep. of Cassidy at 23:7-18, 24:2-6, attached as Exh. 48, In Support of Pl.'s Opp. to Def.'s MSJ/MSA; Dep. of Melvin Bell at 10:7-19, 30:6-11, attached as Exh. U, In Support of Def.'s MSJ/MSA.  Moreover, as discussed above, there is a genuine issue of material fact as to whether the City of Sacramento properly released the Mercedes-Benz pursuant to statutory forfeiture requirements.

Accordingly, the court denies summary adjudication regarding this claim.

### 3. Defamation

Defendants argue that summary adjudication is warranted with respect to this claim because there is no evidence demonstrating that any Defendant disseminated or published information about Mr. Collins' and because the information regarding Mr. Collins' arrest was required to be published under the California Public Records Act.[25]

"'Defamation is an invasion of the interest in reputation. The tort involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to

---

[25] This claim is only alleged against defendants Patton, Schrum, Schindler, Trefethen and the City of Sacramento.

injure or which causes special damage.'"   Gilbert v. Sykes, 147 Cal.App.4th 13, 27 (2007).   In order for a defamation claim to survive a First Amendment challenge, a plaintiff must present evidence of a statement of fact that is provably false.   Id. The dispositive question is whether a reasonable trier of fact could conclude that the published statements imply a provably false factual assertion.   Id.   In the context of defamation, the truth of the allegedly defamatory communication is a complete defense against civil liability, regardless of bad faith or malicious purpose.   Id. at 28.

In the instant case, Plaintiffs allege that Mr. Collins was defamed by Defendants dissemination of news releases falsely implicating him in a drug trafficking conspiracy.   The Court disagrees.   The undisputed evidence demonstrates that Mr. Collins was arrested based on probable cause and that the Sacramento Police Department issued a press release – as required by the California Public Records Act (see Cal. Gov. Code §§ 6250, 6254(f))[26] – stating, among other things, that Mr. Collins was arrested and charged with conspiracy and

---

[26]   See County of Los Angeles v. Superior Court, 18 Cal. App. 4th 588 (1993) (observing that the Legislative intent in requiring disclosure under Public Records Act of arrest information was to continue common-law tradition of contemporaneous disclosure of individualized arrest information to prevent secret arrests and to mandate continued disclosure of customary and basic law enforcement information to the press).

possession of rock cocaine for sale.   Exh. X, attached In Support of Def.'s MSJ/MSA.

Accordingly, because the statement issued by the police was true, summary adjudication is warranted regarding this claim.

**4. Negligence**

Defendants argue that summary adjudication is warranted with respect to this claim because they exercised due care in executing or enforcing the law.[27]

California Government Code § 820.4 states: "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law.   Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."

In the instant case, as discussed above, the officers had probable cause to arrest Mr. Collins.   See Peng v. Mei Chin Penghu, 335 F.3d 970, 976 (9th Cir. 2003) ("Under California law, an officer has probable cause for a warrantless arrest 'if the facts known to him would lead a [person] of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime'").   As such, the officers are immune from negligence liability because they exercised due care in enforcing the law.   Likewise,

---

[27]   This claim is alleged against all defendants.

47

the City is immune from negligence liability because a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.   See Cal. Gov't Code 815.2(b); Adams v. City of Fremont, 68 Cal.App.4th 243, 264 (1998) (public entities are liable for the negligent acts or omissions of their employees acting within the scope of their employment except where either the employee or the public entity is immunized from liability by statute).

Accordingly, summary adjudication is granted regarding this claim.

### III. CONCLUSION

For the above stated reasons, the court GRANTS the motion for summary judgment/adjudication in part and DENIES it in part.

**IT IS SO ORDERED.**

ENTERED this 9th day of October, 2007.

                              s/RALPH R. BEISTLINE
                              UNITED STATES DISTRICT JUDGE